IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CECIL LUCAS, individually, and EKATERENA LUCAS, individually, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>LOCKHEED MARTIN INTEGRATED SYSTEMS, INC., a Maryland corporation; KELLOGG BROWN & ROOT SERVICES, INC., )<br><br>Defendants. )<br>_____ )<br><br>LOCKHEED MARTIN INTEGRATED SYSTEMS, INC., a Maryland corporation, )<br><br>Third-Party Plaintiff, )<br><br>vs. )<br><br>KELLOGG BROWN & ROOT SERVICES, INC., )<br><br>Third-Party Defendant. )<br>_____ ) | CIVIL. NO. 06-00217 DAE-BMK |

ORDER DENYING DEFENDANT AND
THIRD-PARTY DEFENDANT KELLOGG BROWN & ROOT
SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

On February 4, 2008, the Court heard Defendant and Third-Party

Defendant Kellogg Brown & Root Services, Inc.'s Motion for Summary Judgment

as to Plaintiffs' Second Amended Complaint.  Emily Kawashima Waters, Esq.,

appeared at the hearing on behalf of Plaintiffs; J. Stephen Street, Esq., and

Reginauld T. Harris, Esq., appeared at the hearing on behalf of Defendant and

Third-Party Defendant Kellogg Brown & Root Services, Inc.  David Gruebner,

Esq., appeared at the hearing on behalf of Defendant Lockheed Martin Integrated

Systems, Inc. ("Lockheed").  After reviewing the motion and the supporting and

opposing memoranda, the Court DENIES Defendant and Third-Party Defendant's

Motion.

<u>BACKGROUND</u>

On April 21, 2006, Plaintiffs filed their Complaint against Lockheed,

Halliburton Company, and Kellogg, Brown & Root, Inc.  Plaintiffs alleged that on

March 7, 2005, Plaintiff staff sergeant Cecil Lucas fell from a roof top where he

was working when a safety railing collapsed.  The accident occurred at the U.S.

Army base in Tulza, Bosnia, known as Eagle Base.  Plaintiffs asserted that

Kellogg, Brown & Root, Inc. had designed, developed, and constructed the structure from which Cecil Lucas fell and that Lockheed had operated and maintained the common elements of the structure.  A few weeks later, on May 3, 2006, Plaintiffs filed a First Amended Complaint ("FAC"), alleging essentially the same facts and causes of action, but listed only Lockheed as a Defendant. Defendants Halliburton and Kellogg, Brown & Root, Inc. were terminated from the lawsuit by the Court on May 3, 2006.  At the hearing, Plaintiffs' counsel stated that they initially included Halliburton and Kellogg, Brown & Root, Inc. and later dropped them because they believed that the facilities manager who was in charge of maintenance and repair was employed by all three companies, but later found out that he was employed only by Lockheed.

On May 24, 2006, several weeks after Kellogg, Brown & Root, Inc. was dropped from the lawsuit, Defendant Lockheed filed a Third-Party Complaint against KBR, Inc., fna Kellogg Brown & Root.  In the Third-Party Complaint, Lockheed stated that KBR, Inc., fna Kellogg Brown & Root was engaged in engineering, construction, and other types of services supporting the U.S. military services, including services such as operations and maintenance, logistics support, and construction management.  Lockheed further stated that KBR, Inc., fna Kellogg Brown & Root was involved in the construction and/or maintenance of

3

structures, including railings, relevant to Plaintiffs' allegations, and that if

Plaintiffs were injured, such injuries were the fault of KBR, Inc., fna Kellogg

Brown & Root.  (Third Party Compl. ¶¶  4-5.)  In their Answer, filed September 8,

2006, KBR, Inc., fna Kellogg Brown & Root stated that it had been incorrectly

identified in the Third-Party Complaint and that its correct name was Kellogg,

Brown & Root Services, Inc. (hereinafter "KBRSI").[1]  KBRSI admitted that it was

an engineering construction and government services company, but denied that it

was engaged in engineering, construction, and other types of services supporting

the U.S. military services, including operations and maintenance, logistics support,

and construction management.  KBRSI also denied the allegations that it was

involved in the construction and/or maintenance of structures, including railings,

relevant to Plaintiffs' allegations in the FAC.  KBRSI also filed a counterclaim

against Lockheed

On April 11, 2007, prior to the deadline to name additional parties,

Plaintiffs filed a motion for leave to file a second amended complaint to include

KBRSI as a direct defendant.  Plaintiffs stated that when they filed their FAC, they

---

[1] It is unclear whether the party named in the original Complaint, identified
as Kellogg, Brown & Root, Inc., is the same party that was named in the Third-
Party Complaint and the Second Amended Complaint, identified as Kellogg Brown
& Root Services, Inc. (emphasis added).  Plaintiffs argue in passing that the party
named in the original Complaint was a similar entity.

4

did not name KBRSI because they did not have enough information at that time to state claims against KBRSI.  Plaintiffs recognized that Lockheed had filed the Third-Party Complaint against KBRSI nearly one year prior, but argued that because discovery had been limited by security concerns, they were unable to verify KBRSI's involvement with the subject structure and that they only recently discovered through conversations with KBRSI's counsel that KBRSI was indeed involved in the building and design of the subject structure.  On July 5, 2007, the Magistrate Judge granted Plaintiffs' motion for leave to file the Second Amended Complaint.  On July 6, 2007, Plaintiff filed the Second Amended Complaint, naming KBRSI as a direct defendant.

KBRSI filed the instant motion to dismiss on December 7, 2007. (Doc. # 69.)  KBRSI asserts that the statute of limitations has run and the Second Amended Complaint does not relate back to the original Complaint.  Plaintiffs filed their opposition on January 17, 2008, and KBRSI filed a reply on January 24, 2008.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

5

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.

Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corrections</u>, 419 F.3d 885, 891 (9th

Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

6

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630  (quoting <u>First Nat'l Bank of Ariz. v.</u>

<u>Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  <u>Addisu</u>, 198 F.3d at 1134.

       When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

KBRSI contends that it should be dismissed as a direct defendant because the statute of limitations on Plaintiffs' claims against it ran before Plaintiffs filed the Second Amended Complaint, and the Second Amended Complaint does not relate back to the original Complaint.

I.    Statue of Limitations

Under Hawaii law, the defendant bears the burden of proof on its affirmative defenses based upon limitations statutes.[2]  Strand v. Gen. Elec. Co., 945 F. Supp. 1334, 1339 (D. Haw. 1996).  It is undisputed in this case that the statute of limitations for Plaintiffs' claims against KBRSI is two years.  See Haw. Rev. Stat. § 657-7 (the statute of limitations for damage or injury to persons or property is two years).  It is also undisputed that the original Complaint was filed within two years of the date of Cecil Lucas's injury, that it named Kellogg, Brown & Root, Inc., Halliburton, and Lockheed as defendants.  It is further undisputed that Plaintiffs alleged that a railing collapsed, causing Plaintiff Cecil Lucas to fall, but that Plaintiffs did not file suit against KBRSI until more than two years after

_____

[2]The parties agree that Hawaii law applies to this argument.

8

the date of injury.  What is disputed is when Plaintiffs' claims against KBRSI

began to accrue.  KBRSI argues that the statute of limitations for Plaintiffs' claims

against it began to accrue on the date of Cecil Lucas's injury, and therefore,

Plaintiffs' claims are time-barred.  Plaintiffs argue that pursuant to the discovery

rule, the statute of limitations for their claims against KBRSI did not begin to run

on the date of injury, but instead began to run on May 24, 2006, when Plaintiffs

actually discovered the possible causal relationship between the injury and

KBRSI's actions.

   Pursuant to "HRS § 657-7, a tort claim accrues when the plaintiff

discovers, or through the use of reasonable diligence should have discovered, the

negligent act, the damage, and the causal connection between the two."  <u>Assoc. of</u>

<u>Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15,</u>

<u>Inc.,</u> 167 P.3d 225, 270 (Haw. 2007).

   In this case, Plaintiffs' argument is misplaced.  It was not the causal

connection between the negligent act and the injuries that Plaintiffs did not

discover until later, it was only the identity of the entity responsible for

maintaining the railing that Plaintiffs discovered later.  At the time of injury

Plaintiffs were clearly aware of the negligent act (the collapse of the railing), the

damage (Cecil Lucas's injuries), and the causal connection between the two (Cecil

Lucas fell because the railing collapsed).  See Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir. 1984) ("The 'cause' is known when the immediate physical cause of the injury is discovered.").  The only thing that Plaintiffs did not know was who was responsible for the collapse of the railing.  The law is quite clear, however, that a plaintiff's "knowledge of the identity of the alleged wrongdoer is not relevant to the accrual of [the] causes of action[.]"  Strand, 945 F. Supp. at 1340.  This is because an important purpose of the statutes of limitations is to provide "plaintiffs with a period in which to investigate a perceived injury and investigate potential claims.  A plaintiff must take action on such claims, including investigating the identity of potential defendants, before the expiration of the statutory period."  Id.  With knowledge of the fact of injury and its cause, the burden is on the plaintiff "to ascertain the existence and source of fault within the statutory period. . . . diligence or lack of diligence in these efforts is irrelevant."  Dyniewicz, 742 F.2d at 486-87 (quoting Davis v. United States, 642 F.2d 328, 331 (9th Cir. 1981)) (quotation marks omitted).

        In Dyniewicz, the plaintiffs sued the Department of the Interior of the United States for wrongful death based upon their alleged negligence in failing to close a highway during a flood.  The plaintiffs were killed when a flood swept their car off a highway on the island of Hawaii.  742 F.2d at 485.  The court found that

because the plaintiffs knew of both the fact of injury and its immediate physical cause, their cause of action accrued when the bodies of the victims were found, and not when the possible negligence of the Department of the Interior employees was discovered.  Id. at 487.  The court held that the fact that the plaintiffs were ignorant of the involvement of United States employees was irrelevant.

Likewise, in Russell v. Attco, Inc., 923 P.2d 403 (Haw. 1999), the court found that the plaintiffs' claims accrued on the date of the accident, when Judy Russell tripped and fell over a black liner on the ground, and not on the date that the plaintiffs discovered who was responsible for placing the liner on the ground.  Id. at 406.  The court held that

> it is not the negligent act, the damage, or the causal connection between the former and the latter that the Russells failed to 'discover' prior to the filing of their complaint in the present case; all that the Russells were unaware of was the party who placed the black plastic liner, over which Judy tripped, onto the ground.

Id.

Accordingly, here, as Plaintiffs were aware of the injury and its cause at the time Cecil Lucas was injured, Plaintiffs' claim accrued on the date of injury, and not at the time they discovered that KBRSI may be responsible for maintaining the railing.

11

II.     Relation Back

Plaintiffs next argue that even if their claim did accrue on the date of injury, their Second Amended Complaint relates back the their original Complaint, and therefore, they can maintain their claims against KBRSI.  KBRSI asserts that the Second Amended Complaint does not relate back to the original Complaint for two reasons.  First, despite being named as a Third-Party Defendant soon after the lawsuit began, KBRSI argues that it would be prejudiced in defending the merits of this case as a direct defendant.  Second, KBRSI argues that it did not know that the action would have been brought against it, but for a mistake concerning its identity, because Plaintiffs made a tactical strategic decision not to file suit against it, and did not make a mistake concerning its identity.

Rule15(c) of the Federal Rules of Civil Procedure provides that:

An amendment to a pleading relates back to the date of
the original pleading when:
        (A) the law that provides the applicable
        statute of limitations allows relation back;
        (B) the amendment asserts a claim or
        defense that arose out of the conduct,
        transaction, or occurrence set out--or
        attempted to be set out--in the original
        pleading; or
        (C) the amendment changes the party or the
        naming of the party against whom a claim

> is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).[3]  Although Rule 15(c) only refers to an amendment that changes the party, the rule extends to the addition of a party, "even after the statute of limitations has expired, if the requisite notice and identity of interests showings are made."  In re Glacier Bay, 746 F. Supp. at 1391 (citations omitted). The decision of whether the Second Amended Complaint relates back to the original Complaint is committed to this Court's discretion.  Louisiana-Pac. Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993); Kilkenny v. Arco Marine Inc., 800 F.2d 853, 856 (9th Cir. 1986).

Here, the claims against KBRSI brought in the Second Amended Complaint are based on the same occurrence (the fall and injuries suffered

---

[3] The "question of whether amendments to a complaint should relate back to the date of the original complaint is a question of federal procedure not controlled by state law."  In re Glacier Bay, 746 F. Supp. 1379, 1390 (D. Ala. 1990).

therefrom) that was alleged in the original Complaint.  KBRSI got notice of the lawsuit when KBRSI was made a Third-Party Defendant.  KBRSI became a Third-Party Defendant within the statute of limitations period.  KBRSI alleges that it would be prejudiced by now having to defend itself directly, rather than merely as a Third-Party Defendant.

KBRSI, however, has not explained how its defense strategy would change based upon being both a direct defendant and a Third-Party Defendant. Instead, it seems that KBRSI's defense theory would be the same:  KBRSI would still argue that Plaintiffs cannot prove that it was negligent with respect to the railing and, even if they could, Lockheed is fully responsible for the damages. Nonetheless, KBRSI had timely notice of the lawsuit, which "is one way of assuring that the party to be added has received ample opportunity to pursue and preserve the facts relevant to various avenues of defense."  Korn v. Royal Caribbean Cruise Line, Inc., 724 F.2d 1397, 1400 (9th Cir. 1984).  Furthermore, the Second Amended Complaint is substantively similar to the FAC, and KBRSI has not alleged that it needs to conduct new or different discovery because it is now a direct defendant, rather than only a Third-Party Defendant.  See Brink v. First Credit Res., 57 F. Supp. 2d 848, 855 (D. Ariz. 1999) ("Prejudice is also lacking because the Amended Complaint is not materially different from the

14

Original Complaint, and First Credit has not claimed that it is necessary to conduct extensive new discovery.").  Moreover, to the extent KBRSI is arguing that it is prejudiced because it would somehow be subject to increased liability, this argument fails.  Increased liability is not prejudice sufficient to overcome relation back of an amended complaint.  <u>See</u> <u>In re Glacier Bay</u>, 746 F. Supp. at 1391 ("Increased liability is not sufficient prejudice to deny the relation back of [additional] plaintiffs.").  Therefore, KBRSI has not proven that it would be prejudiced by becoming a direct defendant in addition to already being a Third-Party Defendant.

Next, the evidence does not establish as a matter of law that Plaintiffs made a strategic decision to not name KBRSI in their original Complaint or the FAC, and that they did not make a mistake with respect to the identity of the proper party.  The relevant inquiry for determining whether Plaintiffs made a mistake concerning the identity of a proper defendant, is what Plaintiffs knew or thought they knew when they filed the original Complaint.  <u>See</u> <u>Kilkenny</u>, 800 F.2d at 856 (the "inquiry regarding the existence of a mistake of identity should be limited to [the plaintiff's] state of mind as of the time the initial complaint was filed.").  The Ninth Circuit has construed the mistake requirement liberally to allow amendment in cases where "the previously unknown defendants were

15

identified only after the statute of limitations had run. . . . Rule 15(c) is the only

mechanism a plaintiff can invoke to amend a complaint to add additional parties

after the statute of limitations has run." Brink, 57 F. Supp. 2d at 856 (citing

Kilkenny, 800 F.2d at 856-58 and Korn, 724 F.2d at 1399).

> [T]he rationale behind Rule 15(c) is to ameliorate the
> effect of the statute of limitations [p]roperly construed,
> the rule encompasses both mistakes that were easily
> avoidable and those that were serendipitous. A mistake
> is a wrong action or statement proceeding from faulty
> judgment, inadequate knowledge, or inattention.
> Virtually by definition, every mistake involves an
> element of negligence, carelessness, or fault-and the
> language of Rule 15(c)(3) does not distinguish among
> types of mistakes concerning identity.

Centuori v. Experian Info. Solutions, Inc., 329 F. Supp. 2d 1133, 1138 (D. Ariz.

2004) (citations and internal quotation marks omitted).  An event that occurred

after filing the original complaint, including a failure to add a defendant after

receiving new information, can be relevant only if it sheds light either on the

plaintiff's state of mind at the time he or she filed the original complaint, or on the

added party's reasonable belief regarding the reason for being omitted from the

original complaint.  Id. (citing Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000)).

> Rule 15(c)(3) requires courts to ponder whether, in a
> counterfactual error-free world, the action would have
> been brought against the proper party, not whether the
> action should have been amended subsequently to

> include that party.  Thus, what the plaintiff knew (or
> thought he knew) at the time of the original pleading
> generally is the relevant datum in respect to the question
> of whether a mistake concerning identity actually took
> place. What the plaintiff learned later, however, cannot
> be relevant for this purpose . . . [but they] can inform a
> defendant's reasonable beliefs concerning whether her
> omission from the original complaint represented a
> mistake (as opposed to a conscious choice).

Leonard, 219 F.3d at 29 (citations omitted).  This is because a "plaintiff's failure to amend its complaint to add a defendant after being notified of a mistake concerning the identity of a proper party . . . may cause the unnamed party to conclude that it was not named because of strategic reasons rather than as a result of the plaintiff's mistake."  Kilkenny, 800 F.2d at 857.

In Centuori, as in this case, the court found that the statute of limitations began  to run from the date of the alleged violation, and not the date of discovery.  The court, however, found that the first amended complaint related back to the filing of the original complaint because the plaintiff's failure to name the defendant in the original complaint was the result of a mistake concerning identity.  The Centuori court found the Leonard case to be very factually similar.  In Leonard, the plaintiffs, who were injured in a car accident, sued only the owner of the other car involved in the accident within the statute of limitations period.  219 F.3d at 26-27.  While the statute of limitations period was still open, the

17

plaintiffs' counsel discovered that the owner of the car had not been driving the car at the time of the accident.  The plaintiffs, however, did not amend their complaint within the statute of limitations period to add the driver of the car as a defendant.  The court found that the plaintiffs' claim against the driver was time-barred.  Id. at 27.  The appellate court, however, found that the amended complaint related back to the original complaint, because the failure to name the driver was the result of counsel's mistake.  Id. at 29-31.

The Centuori court also found William H. McGee & Co. v. M/V Ming Plenty, 164 F.R.D. 601 (S.D.N.Y.1995) to be persuasive.  In that case, machines had been damaged while in route from South Korea to New York.  The insurer sued the shipping companies for the damage, initially naming Kenney Transport, Inc. as a defendant.  William H. McGee & Co., 164 F.R.D. at 603.  A few months later, the insurer dismissed Kenney Transport, Inc., and filed an amended complaint adding Kenney Transport (Korea) Ltd.  Although the newly added defendant argued that the statute of limitations barred the action against it, the court found the insurer's counsel had made an understandable mistake and therefore, pursuant to Rule 15, the amended complaint related back to the original complaint.  Id. at 604.  The insurer's counsel stated that he had misidentified the proper defendant because (a) the Bill of Lading referred to both companies; (b)

18

the two companies had identical logos; and (c) in a pre-suit letter, the first

defendant had referred to Kenney Transport (Korea) Ltd.'s Bill of Lading as "our"

Bill of Lading.  Id. at 605.

Here, the evidence propounded by KBRSI to demonstrate that at the

time Plaintiffs filed the original Complaint they knew or thought they knew the

identity of KBRSI is not so compelling such that this Court can determine as a

matter of law that Plaintiffs made a strategic decision, rather than a mistake.  First,

KBRSI points to an email from Cecil Lucas written on or before April 26, 2005, in

which he states that "i have file[d] a lawsuit against lockheed martin.  Just

lockheed martin.  They are respon[s]ible for the up keep of all building and safety

there. . . . lockheed martin is in charge of up keep and safety and when they find

something wrong they have kbr fix it."  (KBRSI Ex. I.)  KBRSI argues that this

email demonstrates that Cecil Lucas knew that KBRSI was involved with repairs.

This email, however, was written after the original Complaint had been filed

against Lockheed and Kellogg, Brown & Root.  Neither party, however, concedes

that Kellogg, Brown & Root was the correct entity to sue, or explained whether

Kellogg, Brown & Root, Inc. is the same entity as KBRSI.  Furthermore, although

his email indicates that Cecil Lucas was aware that a company he refers to as kbr

did some maintenance at the base when Lockheed needs them, it does not indicate

that Cecil Lucas knew that KBRSI was involved with general maintenance or repair or was involved in anyway with the railing at issue.  Likewise, Cecil Lucas's deposition testimony about this email refers only to kbr, and does not refer specifically to KBRSI.  It is unclear whether kbr is the same entity as KBRSI or a different entity.

Similarly, the other email written by Cecil Lucas on or before July 5, 2006, which provides that "lockheed martin told my attorney that they aren't respon[si]ble its brown root in charge of all the maintence [sic] on the base.  but you and i know thats [sic] not the case."  (KBRSI EX. J.)  Again, this email does not indicate that KBRSI is the correct brown root entity to sue, or that KBRSI was involved with maintenance of the railings at issue.  In addition, the statement from Army Sergeant Rudolph Lewis mentions that either KBR or Kellogg Brown and Root could be called for service, but it does not mention KBRSI, nor does it state that they are in charge of all general maintenance or maintenance of the railings.  Therefore, none of these documents demonstrate that at the time of filing the original Complaint or the FAC, Plaintiffs were aware of KBRSI's involvement with the subject structure or the railings at issue.

KBRSI also refers to its answer to the Third-Party Complaint, filed on September 8, 2006, as evidence that Plaintiffs were put on notice during the

20

statute of limitations as to its status as a potential defendant.  However, KBRSI

specifically denied Lockheed's allegation that they were involved in the

construction and/or maintenance of structures, including railings, relevant to

Plaintiffs' allegations in the FAC.  KBRSI have not explained how, after reading

the denial of being involved with the railings, Plaintiffs were supposed to realize

that in fact KBRSI is a proper defendant and that Plaintiffs should amend their

Complaint to add it as a party.

          The cases relied on by KBRSI to support its arguments are factually

distinguishable.  For example, in Louisiana-Pac. Corp. v. ASARCO, Inc., 5 F.3d

431 (9th Cir. 1993), ASARCO filed a third-party complaint for contribution or

indemnity against L-Bar Products, Inc., alleging L-Bar to be the successor in

interest to IMP, and only later added IMP as an additional third-party defendant.

Id. at 433.  The Ninth Circuit held that at the time the third-party complaint was

filed, "ASARCO knew perfectly well that IMP was the party who had bought and

resold the slag ... [and that] IMP was the party for whose actions it sought

indemnity.  There was no mistake of identity, but rather a conscious choice of

whom to sue."  Id. at 434. Unlike Plaintiffs and KBRSI, however, ASARCO and

IMP had a relationship that preexisted the lawsuit.  ASARCO had been selling

copper slag to a subsidiary of IMP.  Here, there was no pre-existing contractual

21

relationship between the parties such that Plaintiffs would clearly have been aware of KBRSI's possible involvement.

In <u>Kilkenny</u>, within the statute of limitations period, the named defendant answered the complaint and stated exactly the correct defendants' identities.  The plaintiff brought a second lawsuit naming the new defendants, but she did not amend her complaint in the initial action until after the statute of limitations had run. 800 F.2d at 857.  Here, KBRSI never identified itself as the correct party to sue, nor did it direct Plaintiffs to the correct brown and root entity. Instead, in their answer to the Third-Party Complaint, KBRSI specifically denied that it was involved with the structure at issue and the railing at issue.

Taking the facts in light most favorable to Plaintiffs, as the non-moving party, this Court finds that there is a genuine issue of fact of whether Plaintiffs were mistaken as to the correct defendant to name, and whether KBRSI realized that Plaintiffs were so mistaken.  In other words, KBRSI  has not proven as a matter of law that Plaintiffs made a strategic decision not to include them as a direct defendant in the lawsuit at an earlier date, and that Plaintiffs did not make a mistake.  As in <u>Centuori</u>,

> at best, . . . [Plaintiffs] and/or [their] counsel might have been negligent, careless, or even arguably at fault for not naming [KBRSI] as the responsible . . . party in the

> original Complaint [or the FAC]; however, they do not
> show that the failure to name [KBRSI] was a strategic
> decision and not the result of a mistake concerning
> identity.

329 F. Supp. 2d at 1140-41.

Furthermore, "when a defendant has had notice from the beginning

that the plaintiff sets up and is trying to enforce a claim against it because of

specified conduct, the reasons for the statute of limitations do not exist, and . . . a

liberal rule [of relation back] should be applied." Goodman v. Praxair, Inc., 494

F.3d 458, 471 (4th Cir. 2007) (quoting N.Y. Cent. & Hudson River R.R. v.

Kinney, 260 U.S. 340, 346 (1922)).

> [W]hen a person would reasonably believe that the time
> for filing suit had expired, without having been given
> notice that it should have been named in an existing
> action, that person is entitled to repose.  On the other
> hand, when a person is provided notice within the
> applicable limitations period that he would have been
> named in the timely filed action but for a mistake, the
> good fortune of a mistake should not save him.

Id. at 472-73 (citations omitted).

Here, KBRSI clearly had notice, within the statue of limitations

period, that Plaintiffs were attempting to enforce a claim against it.  Given the

confusion between various brown and root entities, and the fact that the structure

at issue was located in a foreign country and subject to various security issues,

23

KBRSI should have realized that it was possible that Plaintiffs had made a mistake, rather than a strategic decision, and that but for Plaintiffs' possible mistake, it would have been named as a direct defendant either in the original Complaint or in the FAC.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Defendant and Third-Party Defendant KBRSI's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 4, 2008.



_____
David Alan Ezra
United States District Judge

<u>Cecil Lucas, et al. vs. Lockheed Martin Integrated Systems, Inc., et al.</u>, Civil No. 06-00217 DAE-BMK; ORDER DENYING DEFENDANT AND THIRD-PARTY DEFENDANT KELLOGG BROWN & ROOT SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' SECOND AMENDED COMPLAINT